IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-00271-D

| | | |
|---|---|---|
| KIMBERLY BIGGS, in her individual capacity and as lawful guardian *ad litem of L.B.*, and L.B., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| EDGECOMBE COUNTY PUBLIC SCHOOL BOARD OF EDUCATION; JOHN FARRELLY, Superintendent of Edgecombe County Public Schools, in his official capacity; MARC WHICHARD, Assistant Superintendent and Title IX Coordinator of Edgecombe County Public Schools, in his official capacity; CRAIG HARRIS, Southwest Edgecombe High School Principal, in his official capacity; BILLY STROTHER, Southwest Edgecombe High School Assistant Principal, in his official capacity; ALAINA RITTER, Southwest Edgecombe High School Teacher, ALYSSA PARRISH-STAFFORD, Southwest Edgecombe High School Teacher, DARA HARMON, Southwest Edgecombe High School Media Coordinator, in her official capacity, MILES STAFFORD, Edgecombe County Public School Teacher, in his official capacity; and REBECCA SUGG, Southwest Edgecombe High School Counselor, in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BOARD'S MOTION TO DISMISS L.R. 7.1(e), 7.2** |
| Defendants. | ) | |

Defendant Edgecombe County Board of Education, by and through undersigned counsel, submits this brief in support of its Motion to Dismiss Plaintiffs' Amended Complaint filed contemporaneously with this Memorandum of Law pursuant to Local Rules 7.1(e), 7.2. For the following reasons, the Board respectfully requests that its Motion to Dismiss be GRANTED.

## STATEMENT OF THE CASE

Plaintiffs Kimberly Biggs and L.B. (herein "Plaintiff Biggs" and "L.B.") filed a lawsuit against Defendant Edgecombe County Board of Education ("Board"), Defendant Superintendent John Farrelly and several other Board employees on November 1, 2016. (DE 1.) Plaintiffs amended their complaint prior to service on January 19, 2017. (DE 10.) Plaintiffs served the Board and Superintendent with the Amended Complaint on January 23, 2017, and the Board and Superintendent were allowed an extension of time up through March 6, 2017, to answer or otherwise respond to Plaintiffs' Amended Complaint. (DE 13, 20.) The Board and Superintendent Farrelly timely filed a Motion to Dismiss the Amended Complaint on March 6, 2017.

## FACTS AS ALLEGED BY PLAINTIFFS' AMENDED COMPLAINT

Plaintiff L.B. is a senior at Southwest Edgecombe High School ("Southwest"), and her mother, Plaintiff Kimberly Biggs, is an employee of the Board. (Am. Compl. ¶¶ 1, 2.) (all paragraph references hereinafter are references to the Amended Complaint) On May 12, 2016, during L.B.'s junior year, she attended a school-sponsored field trip to Washington, D.C., with the Southwest Edgecombe History Club. (¶ 19.) Prior to the trip, L.B. had been notified that she had been accepted to Governor's School, which is "a statewide summer residential program for gifted and talented high school students," and that she had been designated as Chief Junior Marshal for the senior graduation because she had the highest grade point average in the junior class. (¶¶ 15, 17.) As a junior marshal, L.B. was required to attend certain events preceding graduation. (¶ 17; Am. Compl. Ex. 3.)

Prior to the trip, Plaintiff L.B. and another student "had jokingly made plans about having sex." (Am. Compl. Ex. 5.) While on the trip on May 12 and as the students "were returning to

the hotel from restaurants," the same student "asked [L.B.] if [she] was going to have sex with him that night. [She] asked him if he had a condom, he said no, so [she] said absolutely not." (*Id.*) According to L.B., that student then asked for and received a condom from another student. (*Id.*)

The Board employee chaperones[1] on the field trip had "orally informed students that they intended to check the students' rooms at 10:30 p.m." (¶ 24.) Although the chaperones did not conduct a room check on the evening of May 12, "[L.B.] waited for this time to pass," and at approximately 10:45 p.m., "Plaintiff L.B. left her motel room to visit" to visit three male students,[2] "D.M., T.W., [B.O.], and two other students who were in another hotel room." (¶ 25.) In the hotel room, other students were drinking alcohol, and L.B. saw D.W. and B.O. go into the bathroom with marijuana. (*Id.*) At some point prior to midnight, one of the male students "was getting touchy" with L.B. and she "was okay with this." (Am. Compl. Ex. 5.) According to L.B., this made two of the students "uncomfortable" and they left the room, but L.B. remained in the hotel room with D.M., T.W., and B.O. (¶ 26; Am. Compl. Ex. 5.) Around midnight, L.B. alleges that she laid on the bed to go to sleep. (¶ 28.) L.B. then alleges that D.M. and B.O. initiated sexual intercourse with her. (¶ 34.) T.W. allegedly recorded the sexual encounter on his phone, distributed it, and then climbed onto the bed with L.B., D.M., and B.O., saying "I'm next." (¶ 35.) Afterward, L.B. returned to her hotel room. (¶ 36.) Despite the Amended Complaint's description that that L.B. said "no" and resisted during the sexual encounter, the Amended Complaint does not allege that L.B. or Plaintiff Biggs reported to the Board, Superintendent Farrelly, or any other defendant at any point that L.B. was subject to unwelcome

---

[1] These chaperones, Alaina Ritter, Alyssa Parrish-Stafford, Dara Harmon, and Miles Stafford, have also been named as individual defendants.

[2] The Amended Complaint does not directly identify the sex of D.M., T.W., and B.O., but their sex can be inferred from Plaintiffs' use of male pronouns when referring to them. (¶¶ 29, 30, 34.)

contact from D.M., B.O., or T.W. Rather, Plaintiffs' later statements to staff indicated that the conduct was consensual. (Am. Compl. Exs. 5, 9, 17.)

The next day, Principal Harris and Assistant Principal Strothers came to the hotel to investigate rumors of underage drinking. (¶ 39.) Principal Harris removed D.M. and B.O. from the field trip and "suspended these students for ten (10) days for violating the school rule prohibiting the possession of alcohol on a school-sponsored trip." (¶ 40.) During the remainder of the trip, the chaperones performed room checks, but the masking tape placed on the doors overnight would begin to peel away by the morning. (¶ 42.) Plaintiffs further allege that the students "were not supervised at all times during the field trip." (¶¶ 22, 23, 38.)

On May 17, after the students had returned from the trip, school staff "questioned Plaintiff L.B. about rumors of a video involving the sexual activity," and "Plaintiff L.B. admitted to being in the motel room with the boys, but she denied the allegations of sexual activity." (¶ 47.) On May 18, L.B. "voluntarily returned" to the counselor's office "because she was upset about the rumors of an alleged video and concerned that her mother, Plaintiff K.B., had also heard the rumors." (¶ 49.) During this visit, L.B. admitted to the counselor and Principal Harris that she engaged in sexual activity during the trip. (¶ 53.) Afterward, Principal Harris "ordered Plaintiff L.B. to write a statement," but Plaintiffs allege that the male students involved were not ordered to write statements. (¶¶ 54, 55.) Plaintiffs allege that L.B. "tr[ied] to protect the inebriated students" in her written statement and that this statement was used as "the sole basis of her suspension." (¶¶ 54, 57.)

On May 19, L.B. was called to the office by Principal Harris "to discuss her written statement" in the presence of Assistant Superintendent Marc Whichard and was asked questions "regarding the alcohol and drugs in the room and [to] verify T.W.'s involvement in the sexual

activity." (¶¶ 60, 61.)  Principal Harris contacted Plaintiff Biggs, notified her L.B. may receive a long-term suspension, and asked her to come to Southwest as soon as possible.  (¶¶ 64, 65.) When Plaintiff Biggs arrived, he notified her that he was suspending L.B. for ten (10) days, which is a short-term suspension, and provided her with a discipline referral and notice.  (¶ 66; Am. Compl. Exs. 6, 8 at 1.)  L.B.'s suspension was for "Sexual Harassment."  (¶ 68.)  During a suspension, "students are not to attend athletic events or participate in any extracurricular activity."  (Am. Compl. Ex. 8 at 1.)  Because she was suspended, L.B. was not able to attend the required Senior Awards Ceremony on May 19 and could not continue to serve as Chief Junior Marshal as a result of her missed attendance.  (¶ 77.)  "Defendant Board gave T.W. the same ten-day suspension for 'sexual harassment.'"  (¶ 118.)  The Amended Complaint does not contain any allegations that T.W., B.O., or D. M. were allowed to participate in extracurricular or athletic activities during their suspensions.

After leaving Southwest on May 19, Plaintiff Biggs went to the central office and spoke with Assistant Superintendent Whichard.  (¶ 81.)  She alleges that Mr. Whichard "refused to modify the disciplinary decision or the language of the referral," agreed with Principal Harris's manner of investigation, and assured her that L.B.'s Governor's School nomination would not be affected by the suspension.  (¶¶ 81, 82.)  During this conversation, she alleges Mr. Whichard "implied that Plaintiff L.B. left her room specifically for the purpose of having sex."  (¶ 83.)  The Amended Complaint further alleges that Mr. Whichard told her that another employee was not available that day to meet with Plaintiff Biggs in order to provide her with a copy of the Code of Conduct policy.  (¶ 84.)  Plaintiff Biggs alleges this experience "intimidated [her] so much that she left the building and went straight to an urgent care center where she presented with extremely high blood pressure."  (*Id.*)

Although the Amended Complaint alleges Plaintiff Biggs was prevented from timely obtaining copies of Board policies in order to determine how to appeal the discipline, Plaintiff Biggs did submit such an appeal on May 26. (¶¶ 85, 89.) Her grievance contested the application of the Code of Conduct to L.B.'s behavior, argued a different offense was applicable, disagreed with the length of L.B.'s suspension, complained of the effect the suspension had on L.B.'s ability to serve as Chief Junior Marshal, and complained of the supervision on the field trip. (Am. Compl. Ex. 17.) Absent from the grievance was any allegation that L.B. had been treated differently because of her sex or that she had experienced any unwelcome contact from the three male students.[3] (*Id.*)

On June 1, Plaintiff Biggs attended a grievance conference with Superintendent Farrelly and alleged he intimidated her during the conference. (¶ 92.) After the grievance, Plaintiff L.B. alleges Superintendent Farrelly "began making an unprecedented number of visits" to the school where she worked and that during these visits he "would walk down the hall" where her "classroom is located, stop outside her classroom, look inside, and then continue walking" which had the effect of intimidating her. (¶¶ 95, 96.) On June 6, Superintendent Farrelly denied Plaintiff Biggs's grievance. (¶ 97.) Also on June 6, L.B.'s nomination for Governor's School was rescinded. (¶ 98; Am. Compl. Ex. 10.) On June 10, Plaintiff Biggs appealed the Superintendent's decision regarding her grievance to the Board. (¶ 104.) The sole focus of the written appeal was that L.B. be permitted to participate in graduation as the Chief Junior Marshal. (Am. Compl. Ex. 12.) After holding a hearing on June 16, the Board denied Plaintiff Biggs's appeal on June 27. (¶¶ 106, 111; Am. Compl. Ex. 15.) During the appeal process,

---

[3] While the Amended Complaint alleges "Plaintiff K.B. was concerned that Plaintiff L.B. had been the victim of sexual assault," it contains no allegations that Plaintiff Biggs provided any staff with notice of her concern. (¶ 78.) In addition, there is no mention or allegation of different treatment based on sex in her May 26 grievance. (Am. Compl. Ex. 17.)

6

Superintendent Farrelly and the Board acknowledged that Plaintiff Biggs "raised valid concerns about adult supervision" but concluded L.B. ultimately violated the Code of Conduct and that her consequence was appropriate. (¶ 113; Am. Compl. Exs. 9, 15.)

The Amended Complaint includes other complaints regarding the allegedly deficient investigation and appeal involving L.B.'s conduct on the field trip. While Plaintiffs have neither alleged that they reported to Principal Harris that L.B. was subject to unwelcome conduct nor that they reported a sexual offense or sexual assault, they allege Principal Harris failed to "notify local enforcement to investigation the sexual interactions described in Plaintiff L.B.'s statement." (¶ 74.) Plaintiffs also allege they experienced "grave emotional distress, overwhelming anxiety, and depression" and that on June 7, Plaintiff Biggs contacted a mobile crisis unit for L.B. as a result of the events. (¶¶ 100, 101.) Plaintiffs also contend that L.B. is no longer a member of the Leadership Academy, National Honor Society, or the Tutoring Tactics Community Outreach Program and that her interactions with her peers have been impaired. (¶ 120.)

## STANDARD OF REVIEW

### I. Motion to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, viewing the complaint in a light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," however, cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The plaintiff bears "the burden … to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). "While a plaintiff is not charged

with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief." *Id.* Facts not alleged in the complaint should not be assumed by the reviewing court. *Estate Const. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 221-22 (4th Cir. 1994). However, the court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] ... the exhibit prevails." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (quoting *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991).

The court need not accept legal conclusions a plaintiff draws from the facts asserted; likewise, the reviewing court "need not accept as true unwarranted interferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). Accordingly, a plaintiff's bald assertions that a defendant violated the law are insufficient to survive a motion to dismiss under Rule 12(b)(6). *Estate Const. Co.*, 14 F.3d at 221.

## II. Motion to Dismiss Under Rule 12(b)(1) and 12(b)(2)

It is well-established in North Carolina that issues of sovereign immunity and governmental immunity are jurisdictional. *See, e.g.*, *Seipp v. Wake Cnty. Bd. of Educ.*, 132 N.C. App. 119, 122, 510 S.E.2d 193, 195 (1999) (stating that the court considered the issue of sovereign immunity in an interlocutory appeal because it is a matter of personal jurisdiction); *Welch Contracting, Inc. v. N.C. Dept. of Transp.*, 175 N.C. App. 45, 50, 622 S.E. 2d 691, 694

8

(2005) (stating that the defense of sovereign immunity is a jurisdiction defense). To resolve a jurisdictional defense of immunity raised under Rule 12(b)(1) or 12 (b)(2), the court may consider matters outside the pleadings, including affidavits, without converting the motion to dismiss into a motion for summary judgment. *See Smith v. Privette*, 128 N.C. App. 490, 493, 495 S.E.2d 395, 397 (1998); *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 2013 WL 5508370, at *2 (N.C. Ct. App. Oct. 1, 2013) (table) (unpublished). In order to exercise jurisdiction, "a plaintiff's complaint must affirmatively demonstrate the basis for the waiver of immunity when suing a governmental entity which has immunity." *Arrington v. Martinez*, 215 N.C. App. 252, 263, 716 S.E.2d 410, 417 (2011).

In support of its jurisdictional defense of sovereign immunity, the Board submits the affidavits of North Carolina School Boards Trust ("NCSBT" or "Trust") Records Custodian Melody Coons, and Edgecombe County Board of Education Finance Officer Laurie Leary. Ms. Coons's affidavit, which is attached as Exhibit 1 to Defendant Board's Motion to Dismiss Amended Complaint, states that the Board participates in the Trust and attaches a true and correct copy of the Board's coverage agreement with the Trust ("Coverage Agreement"). Ms. Leary's affidavit, which is attached to the Board's motion as Exhibit 2, states that the Board has not purchased or otherwise secured any liability insurance coverage or risk protection for claims other than that which it has by virtue of its participation in the Trust.

## **ARGUMENT**

I.  **Plaintiff L.B.'s claims must be dismissed because the Amended Complaint does not show that Plaintiff Kimberly Biggs is permitted to bring claims on L.B.'s behalf.**

Capacity to sue is determined by the law of the state in which the district court is held. *See* Fed. R. Civ. P. 17(b). In North Carolina, in any proceeding in which a plaintiff is a minor,

the minor "must appear by general or testamentary guardian . . . or if there is no such known guardian, then such persons may appear by guardian ad litem." N.C. R. Civ. P. 17(b)(1). In North Carolina, because of the "important and valuable rights" at stake, "even the parent or other natural guardian of the infant cannot step forward as self-appointed guardian Ad litem, nor will the courts make such appointment in a perfunctory manner." *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 286 (4th Cir. 1979); *see also* Fed. R. Civ. P. 17(c). Under Local Civil Rule 17.1(a), E.D.N.C., "[a]ppointments of guardians *ad litem* by any state court shall satisfy the requirements of the Federal Rules of Civil Procedure unless the court finds that the interests of the parties so represented are not being adequately protected."

Although the Amended Complaint alleges L.B. is a minor, as of the time the Amended Complaint was filed, no duly appointed representative or guardian *ad litem* had been appointed for L.B. in compliance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of North Carolina, or the North Carolina Rules of Civil Procedure. While the Amended Complaint states Plaintiff Biggs is the "lawful guardian ad litem" for L.B., it lacks any allegation or exhibit showing that this Court or any North Carolina court *has appointed* Plaintiff Kimberly Biggs to serve as the guardian *ad litem* for L.B. Because it appears from the face of the Amended Complaint that Plaintiff Biggs has not been properly appointed as the representative or guardian *ad litem* entitled to bring claims on L.B.'s behalf, all claims brought on behalf of Plaintiff L.B. should be dismissed.[4]

## II. Plaintiffs' claims for erroneous outcome discrimination and selective enforcement under Title IX in Counts I and II must be dismissed because Plaintiffs have failed to state a claim.

---

[4] Even if the Court were to find sufficient allegations of capacity for Plaintiff Biggs to bring claims on behalf of L.B., the claims brought by L.B. or on her behalf should be dismissed for the reasons set forth in the remainder of this memorandum.

To establish institutional liability for erroneous outcome discrimination under Title IX, a plaintiff must allege: "(1) 'a procedurally or otherwise flawed proceeding'; (2) 'that has led to an adverse and erroneous outcome'; and (3) 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'" *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 765-66 (D. Md. 2015) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)); *see also Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961–62 (4th Cir.1997) (relying on *Yusuf* when analyzing an erroneous outcome claim), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir.1999). For this third element, "a plaintiff must do more than merely rely on 'a conclusory allegation of gender discrimination.'" *Salisbury Univ.*, 123 F. Supp. 3d at 766. Rather, "[i]n order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of [ ] discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *see also Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at *9 (W.D. Va. Aug. 5, 2015) ("A plaintiff seeking relief under this standard must allege facts which establish a causal link between the erroneous outcome and gender bias.").

Here, Plaintiffs fail to allege facts supporting any elements of the *prima facie* case for erroneous outcome discrimination. First, Plaintiffs have failed to identify a disciplinary proceeding much less allege circumstances that would show a flawed disciplinary proceeding. To the extent the disciplinary proceeding at issue is Plaintiff L.B.'s short-term suspension, a principal has the authority "to impose a short-term suspension on a student who willfully engages in conduct that violates a provision of the Code of Conduct authorizing short-term suspension." N.C. Gen. Stat. §115C-390.5. Plaintiffs have not alleged facts that would show Principal Harris failed to provide L.B. due process prior to imposing the suspension. To the

11

contrary, Plaintiffs' allegations if proven would show that prior to L.B.'s suspension: L.B. was asked on two occasions about the sexual activity, L.B. admitted to engaging in sexual activity, she was provided the opportunity to write a statement, she was asked questions about the written statement, Plaintiff Biggs was provided with written notice of the suspension, and Plaintiff Biggs was permitted to seek review of the decision through the grievance process. (¶¶ 47, 49, 53, 57). The Amended Complaint is devoid of allegations that if proven would show L.B. was denied an opportunity to respond to the alleged misconduct or was otherwise subjected to a flawed proceeding. *See Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 601 (S.D. Ohio 2016) (finding plaintiff failed to allege a flawed disciplinary proceeding where there were no allegations that plaintiff had been denied the opportunity to present evidence at the disciplinary hearing).

Second, Plaintiffs have not alleged facts showing an erroneous outcome. The essence of Plaintiffs' erroneous outcome allegation is that there was no evidence L.B. engaged in offensive or unwanted touching. (*See* ¶ 154.) However, the Code of Conduct's sexual harassment definition specifically incorporates all of Policy 4315, which prohibits, *inter alia*: "behavior that is immoral, indecent, lewd, disreputable or of an overly sexual nature in the school setting." (Am. Compl., Ex. 7, 8.)[5] In other words, while "Sexual Harassment" in the Code of Conduct prohibits offensive or unwanted touching, the offense is not limited to only offensive or unwanted conduct. Moreover, the Code explicitly applies to "school-approved activities" such as the History Club field trip. (Am. Compl. Ex. 8.) The allegations in the Amended Complaint if proven would show that L.B. engaged in conduct of an "overly sexual nature" by having consensual sexual intercourse with two students and engaging in consensual sexual contact with a third student during a school field trip. (Am. Compl., Ex. 5 at 1-2, Ex. 17 at 8.) While

---

[5] The Code of Conduct and other Board policies incorporated by reference in the Code of Conduct are attached to the Amended Complaint and these offense definitions are integral to Plaintiffs' claims.

Plaintiffs disagree that this conduct should be categorized as "sexual harassment" under the Code of Conduct, L.B.'s alleged conduct still falls within the scope of "sexual harassment" as it has been defined in the Code. *See Doe v. W. New England Univ.*, No. CV 15-30192-MAP, 2017 WL 113059, at *21 (D. Mass. Jan. 11, 2017) (dismissing an erroneous outcome claim under Title IX where "there was an evidentiary basis for the [disciplinary board's] decision. Plaintiff's disagreement with that decision does not constitute a claim upon which relief can be granted due to the absence of 'basic fairness.'").[6]

Third, the Amended Complaint lacks any allegation of statements or conduct by Principal Harris or other staff involved in the suspension that would tend to show gender bias or that they were influenced in the decision by L.B.'s gender. The Amended Complaint contains only conclusory allegations that the investigation was "cursory, biased, and intentionally incomplete." (¶ 154.) The sole specific allegation of L.B.'s supposed different treatment from male students in the disciplinary process is that "Defendant School District did not order any of the males involved in the incident to write a statement." (¶ 55.) However, absent from the Amended Complaint are any allegations that would give rise to a plausible claim that the Board systemically treated female students differently in the discipline investigation process. *Cf. Yusuf*, 35 F.3d 709. Indeed, the Amended Complaint contains allegations showing that she was treated the *same* as one of the male students involved: "Defendant Board gave T.W. the same ten-day suspension for 'sexual harassment.'" (¶ 118.) Even had Plaintiffs alleged facts showing a flawed proceeding or erroneous outcome, Plaintiffs' erroneous outcome claim must be dismissed

---

[6] The Amended Complaint also alleges that the Board failed to train staff regarding how to investigate potential student-on-student harassment and that this alleged deliberate indifference led to an erroneous outcome. However, the deliberate indifference standard is inapplicable when analyzing an erroneous outcome claim, *see Mallory v. Ohio Univ.*, 76 Fed. App'x 634, 638 (6th Cir. 2003), and allegations of improper training in an erroneous outcome claim must be accompanied by facts sufficient to conclude the educational institution's conduct was motivated by gender bias. *See Univ. of Cincinnati*, 173 F. Supp. 3d 586 (S.D. Ohio 2016).

13

because they have failed to allege specific facts such as statements or a pattern of conduct that would tend to show gender bias as well as a causal connection to the outcome of the discipline proceeding. *See, e.g.*, *Doe v. Cummins*, 662 Fed. App'x 437, 453 (6th Cir. 2016) (dismissing claim where plaintiffs "fail[ed] to show how these alleged procedural deficiencies [regarding due process violations] are connected to gender bias"); *Western New England Univ.*, 2017 WL 113059 (dismissing claim because allegations that an administrator "bull[ied]" and "yelled" a student during a disciplinary interview did "not raise a reasonable inference of gender bias"); *Univ. of Cincinnati*, 173 F. Supp. 3d at 607 (holding "the complaint fails to create a reasonable inference that the disciplinary hearing procedures adopted by [defendant] were motivated by a desire to discriminate against male students.").

Plaintiffs' selective enforcement claim under Title IX fails for the same reason as her erroneous outcome claim, namely she has not alleged facts that would show she has been treated differently because of her sex. For a selective enforcement claim, a plaintiff must allege facts that show "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715.

As discussed above, Plaintiffs have alleged that one of the male students, T.W., received the same suspension for "sexual harassment" and for the same length of time. (*See* ¶ 118.) Plaintiffs have also alleged that the other two male students involved received ten (10) day suspensions for their conduct on the trip. (See ¶ 115.) While Plaintiffs have contended these two students "were punished only for the possession of alcohol and drugs," Plaintiffs' allegation that T.W. received the "same" infraction and consequence as L.B. shows that she did not receive less favorable treatment than B.O. and D.M. *because of her sex.* As Plaintiffs have not alleged facts that would show male students were treated more favorably in similar circumstances,

Plaintiffs' selective enforcement claim must also be dismissed. *See Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015) (denying summary judgment for selective enforcement claim where plaintiff was "unable to show that a female would be subject to more lenient sanctions"); *Curto v. Smith*, 248 F. Supp. 2d 132, 147 (N.D.N.Y. 2003), aff'd in part, appeal dismissed in part sub nom. *Doe v. Anonymous Unnamed Sch. Employees & Officials of Cornell Univ. Coll. of Veterinary Med.*, 87 F. App'x 788 (2d Cir. 2004), and aff'd, 93 F. App'x 332 (2d Cir. 2004) (dismissing plaintiff's selective enforcement claim where she failed to allege that male students were treated more favorably in similar circumstances).

### III.    Plaintiffs' claims for retaliation in violation of Title IX in Count III must be dismissed because Plaintiffs have failed to state a claim.

The Supreme Court has recognized that Title IX's private cause of action encompasses "[r]etaliation against a person because that person has complained of sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). To state a claim for retaliation, a plaintiff must show (1) she engaged in protected activity; (2) that defendant took a material adverse action; and (3) that a causal connection existed between the protected activity and the adverse action. *See Emeldi v. Univ. of Oregon*, 698 F.3d 715, 732-33 (9th Cir. 2012); *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) (applying a similar standard for the *prima facie* case for retaliation in the Title VI context). "Where the retaliation occurs *because the complainant speaks out about sex discrimination*, the 'on the basis of sex' requirement is satisfied." *Jackson*, 544 U.S. at 179 (emphasis added).

Here, Plaintiffs' allege that K.B "engaged in activities and asserted rights protected under Title IX by filing a grievance on May 26, 2016" and that her "grievance complained of sex discrimination." (¶¶ 167, 168.) However, Plaintiff Biggs's grievance, which is attached to the Amended Complaint, does not include any allegations that L.B. was treated differently because

of her sex. [7]  (Am. Compl. Ex. 17.)  Rather, her grievance contests the application of the Code of Conduct, L.B.'s suspension, the effect her suspension had on L.B.'s ability to serve as Chief Junior Marshal, and the supervision on the field trip. [8]  (*Id.*)  While the grievance complains of general unfairness, the allegation lacks any connection to L.B.'s gender and is instead based on general allegations of "favoritism, ignoring less popular students, and talking and interacting with certain groups of students over others."  (*Id.* at 3.)  Plaintiff Biggs further states in her grievance that L.B. and the three male students were all treated unfairly:  "I conclude that she and the other students were victims of failed supervision and neglect."  (*Id.* at 5.)

Because Plaintiffs did not allege in the May 26 grievance that L.B. had been treated differently because of her sex, nor have they alleged that they filed a complaint pursuant to the Board's Discrimination, Harassment and Bullying Complaint Procedure, Plaintiffs have not alleged facts that would show Plaintiffs engaged in protected activity *about sex discrimination* and their retaliation claim must be dismissed.  *See Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215, 222 (5th Cir. 2015) (denying plaintiff's retaliation claim where "he has not shown that his complaints were related to gender inequality and thus has not shown that he engaged in activity protected by Title IX").  *Cf. Emeldi*, 698 F.3d at 725 (allowing retaliation complaint to proceed where plaintiff alleged she had made a complaint about institutional bias against women in a Ph.D. program and that male students were treated more favorably); *Salisbury Univ.*, 107 F. Supp.3d at 490 (allowing retaliation claim to proceed where plaintiff had alleged he had filed a Title IX claim); *Fairchild v. Quinnipiac Univ.*,

---

[7] Plaintiff Biggs's grievance is attached to the Amended Complaint and an integral part of her alleged protected activity.

[8] Notably, the Board's grievance policy expressly states that it is not a vehicle to resolve discrimination claims and that "[c]laims of discrimination, harassment or bullying must be processed under policy 1720/4015/7225, Discrimination, Harassment and Bullying Complaint Procedure," further reducing the plausibility of any allegation that Plaintiff Biggs was making a complaint about sex discrimination when she filed her May 26 grievance.  (Am. Compl. Ex. 18 at 1-2.)

16 F. Supp.3d 89, 95 (D. Conn. 2014) (allowing retaliation claim to proceed where plaintiff alleged that she was terminated after testifying "about her observations of unequal treatment of female student athletes").

IV.  **Plaintiffs' claims for violation of Title IX regulations in Count IV must be dismissed because there is no private right of action for such claim.**

The Amended Complaint alleges a violation of the Title IX regulations regarding designation and notification of a Title IX coordinator and Title IX's complaint processes.  While there is an implied private right of action to enforce claims of *intentional sex discrimination* in violation of Title IX, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690-93 (1979), the Supreme Court has not directly considered whether there is a private right of action to enforce regulations promulgated pursuant to Title IX.  Nonetheless, Title IX was patterned after Title VI of the Civil Rights Act of 1964, has been frequently interpreted and applied in a manner similar to Title VI, *see id.* at 694-95, and the Court has considered such a question under Title VI.  In *Alexander v. Sandoval*, the Court expressly rejected that there is always private right of action to enforce regulations that are promulgated pursuant to Title VI.  532 U.S. 275, 290 (2001) (holding there is no private right of action to enforce disparate impact regulations promulgated under Title VI).

Here, the Court's decisions in the Title VI and Title IX contexts compel the conclusion that Plaintiffs' proposed cause of action to enforce 34 C.F.R. 106, *et seq.*, should be dismissed. The Court's decisions regarding private rights of action under Title IX have focused on whether the proposed action at issue is encompassed within the statutory prohibition that "[n]o person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. 1681(a) (emphasis added).  *See also Jackson*, 544 U.S. 178 n. 2 (noting the majority's agreement with the dissenting opinion that "plaintiffs may not

17

assert claims under Title IX for conduct not prohibited by that statute"). When the Court held that the private right of action under Title IX encompassed retaliation claims, it emphasized its consistency with *Sandoval* and that its decision was not one allowing a private right of action to enforce Title IX's regulations: "We do not rely on regulations extending Title IX's protection beyond its statutory limits; indeed, we do not rely on the Department of Education's regulation at all, because the statute itself contains the necessary prohibition." *Id.* at 178. *See also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (holding that noncompliance with a regulation "does not itself constitute 'discrimination' under Title IX" and "[w]e have never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements). Because the conduct alleged in Count IV does not pertain to allegations of intentional sex discrimination and seeks instead to enforce Title IX's administrative regulations, Plaintiffs' claim should be dismissed because there is no private right of action to enforce such regulations.

V. **Plaintiffs' claims for violation of § 1983 in Count V fail to state claim on both Equal Protection and Procedural Due Process grounds.**

    A. *Plaintiffs fail to state an equal protection claim because they have not alleged facts that would show the Board had a policy or custom that caused the alleged injury at issue.*

To state an equal protection claim under the Fourteenth Amendment, a plaintiff must allege "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). In order to hold a local government body liable for such an injury under section 1983, the government body itself must have caused the constitutional violation at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This occurs when the "execution of [the board's] policy or custom . . . inflicts the injury." *Monell v.*

18

*New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982). A plaintiff must be able not only to point to such a policy or custom, but to demonstrate that the policy was the "moving force" behind the plaintiff's injury. *Board of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Here, as discussed in Part IV of this memorandum, Plaintiffs have not alleged different treatment on the basis of sex given their allegations regarding T.W. In addition, Plaintiffs' training allegation regarding Title IX is unrelated to the conduct of which they complain. Specifically, Plaintiffs have alleged that the Board failed to train Principal Harris "on how to investigate potential student-on-student sexual harassment" which "in part, led to the erroneous outcome of L.B.'s discipline" and that the Board "otherwise failed to train [staff] on Title IX investigation requirements and its prohibition on discriminatory discipline." (¶¶ 153, 193.) However, Plaintiffs have not alleged that they or anyone else made a complaint pursuant to the Board's Discrimination, Harassment, and Bullying Complaint Procedure regarding student-on-student harassment or otherwise raised a complaint under Title IX. As a result, any alleged failure to train for Title IX compliance even if proven, would not be a moving force in the discipline investigation regarding L.B.'s potential code of conduct violations.

>    B. *Plaintiffs fail to state a claim for a procedural due process violation because they have not alleged facts showing a deprivation of a protected property interest without adequate review.*

"In order to state a claim for a violation of due process, 'a plaintiff must allege sufficient facts to support a finding that the [plaintiff was] 'deprived of life, liberty, or property, by governmental action.'" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 79 (4th Cir. 2016) (quoting *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011)). To have a property interest in a certain government benefit, "'a person must have more than an abstract

need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.* (quoting *Mallette v. Arlington Cty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996)). When considering whether a plaintiff has a property interest, the Fourth Circuit has considered whether the interest at issue is secured by state law. *See Knight v. Vernon*, 214 F.3d 544, 553 (4th Cir. 2000) (examining state law to determine whether jailer had protected property interest in continued employment and concluding that she did not). Where there is a protected property interest, the interest "cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The amount of process required to be adequate depends on the protected interest at issue, but "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

Plaintiffs' procedural due process claim fails because L.B. was provided the due process required prior to her short-term suspension. Prior to being suspended from school, a student "must be given some kind of notice and afforded some kind of hearing." *Goss v. Lopez*, 419 U.S. 565 (1975). For a short-term suspension, this means "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. Here, prior to L.B.'s suspension, she was provided an opportunity to respond to the alleged misconduct that met *Goss*'s minimum requirements: she was asked on two occasions about the sexual activity, she admitted to engaging in sexual activity, she was provided the opportunity to write a statement, she was asked questions about the written statement, and Plaintiff Biggs was provided with written notice of the suspension. (¶¶ 47, 49, 53, 57). *See E.W. v. Wake Cnty. Bd. of Educ.*, No. 5:09-CV-198-FL, 2010 WL 1286218, at *3 (E.D.N.C. Mar. 30, 2010) (finding *Goss*

20

requirements met where "E.W. was allowed to present his version of the events to school officials, both orally and in writing" and dismissing plaintiff's procedural due process claim).

Plaintiffs' main complaint is that they believe the Code of Conduct was inappropriately applied; however, even an alleged misinterpretation of the Code of Conduct is not sufficient to state a claim for a due process violation. *See, e.g.*, *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 570 (6th Cir. 2011) ("School officials' alleged acts during [plaintiff's] appeals of his suspension did not implicate and could not violate [plaintiff's] right to procedural due process even if contrary to school policies and procedures or [state] law."); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 603 (S.D. Ohio 2016) (holding plaintiff's "bare allegations that the [disciplinary] Panel misinterpreted the Student Code of Conduct are insufficient to state a due process violation"). Because the Amended Complaint contains factual allegations that L.B. was provided notice and an opportunity to respond prior to her suspension, her procedural due process claim regarding her punishment must be dismissed.

In addition, Plaintiffs' procedural due process claim related to the rescission of her Governor's School admission fails because she had no protected property interest in such admission. "The opportunity to participate in extracurricular activities is not, by and in itself, a property interest." *Pegram v. Nelson*, 469 F. Supp. 1134, 1139 (M.D.N.C. 1979) (noting "this Court is unaware of any North Carolina statute or law which creates a right to participate in extracurricular activities."). As the Amended Complaint fails to allege that any interest is created under state law regarding participation in particular extracurricular activities, her interest in attending Governor's School or participating in extracurricular activities is not a protected property interest. *See id.* at 1140 (holding "denial of the opportunity to participate in merely one or several extracurricular activities would not give rise to a right to due process"); *Fowler v.*

21

*Williamson*, 448 F. Supp. 497, 502 (W.D.N.C. 1978) (holding no protected property interest in attending graduation ceremony).

**VI.    Plaintiff Biggs's claims for violation of the Whistleblower Act in Count VI must be dismissed for failure to state a claim.**

The North Carolina Whistleblower Act offers protection for state employees and other employees of certain local governments. N.C. Gen. Stat. § 126–84. To state a claim under the North Carolina Whistleblower Act, a plaintiff must allege: "(1) that the plaintiff engaged in a protected activity, (2) that the defendant took adverse action against the plaintiff in his or her employment, and (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff." *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 788, 618 S.E.2d 201, 206 (2005). However, North Carolina courts have "decline[d] to extend the definition of a protected activity to individual employment actions that do not implicate broader matters of public concern," noting "[w]e do not believe the General Assembly intended N.C. Gen. Stat. § 126–84 to protect a State employee's right to institute a civil action concerning employee grievance matters." *Hodge v. N. Carolina Dep't of Transp.*, 175 N.C. App. 110, 117, 622 S.E.2d 702, 707 (2005). *See also Manickavasagar v. N.C. Dep't of Pub. Safety*, 238 N.C. App. 418, 428, 767 S.E.2d 652, 658 (2014) (holding employee's letter "constituted an employee grievance matter, which was not protected by the Act").

First, Plaintiff Biggs's Whistleblower claim fails because she has failed to allege she engaged in protected activity that "implicate[s] broader matters of public concern." Rather, the action at issue is Plaintiff Biggs's May 26 grievance, submitted pursuant to the "Student and Parent Grievance Procedure" that pertained to her complaint that her daughter's discipline was improper. (Am. Compl. Ex. 17, 18.) In the same way that an employee grievance is not protected activity under the Whistleblower Act, a parent grievance is not protected activity that

implicates broader matters of public concern—finding otherwise would create a scenario where employees who are parents may raise claims pursuant to the Whistleblower Act but non-employee parents would not be permitted to raise such claims.

In addition, Plaintiff Biggs has not alleged any adverse employment action in support of a Whistleblower claim. The only allegation related to her employment is that Superintendent Farrelly "began making an unprecedented number of visits" to the school where she worked and "would walk down the hall" where her "classroom is located, stop outside her classroom, look inside, and then continue walking." (¶ 95.) At best, Plaintiff has alleged that she experienced "ordinary tribulations of the workplace," which do not constitute an adverse action. *See Robertson v. Cree, Inc.*, No. 5:09-CV-189-H, 2010 WL 8983218, at *4 (E.D.N.C. Mar. 29, 2010) (discussing in the Title VII retaliation context that "[a]t best, [plaintiff] complains of trivial harms, minor annoyances and the 'ordinary tribulations of the workplace' that the Supreme Court has held insufficient to form the basis of a retaliation claim (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Because Plaintiff Biggs has alleged neither protected activity nor an adverse action, her Whistleblower Act claim must be dismissed.

**VII.  Plaintiffs' tort claims against Defendant Board in Counts VII, VIII, IX, X, XI, and XII should be dismissed because the Board has not waived its immunity to suit.**

The doctrine of governmental immunity bars suits against "the state, its counties, and its public officials sued in their official capacity." *Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461 (2000). "A county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its [governmental] immunity from tort liability pursuant to statutory authority." *Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 22-23, 348 S.E.2d 524,

526 (1986); *see also Hallman v. Charlotte-Mecklenburg Bd. of Educ.*, 124 N.C. App. 435, 437, 477 S.E.2d 179, 180 (1996). N.C. Gen. Stat. § 115C-42 authorizes a local board of education to waive governmental immunity through the purchase of liability insurance. "N.C. Gen. Stat. § 115C-42 is the *exclusive* means of a local board of education to waive immunity." *Ripellino v. N.C. Sch. Bds. Assoc.*, 158 N.C. App. 423, 428, 581 S.E.2d 88, 92 (2003) (citing *Lucas v. Swain Cnty. Bd. of Educ.*, 154 N.C. App. 357, 361, 573 S.E.2d 538, 541 (2002)) (emphasis added).

      A.      *The Board's participation in the Trust does not waive its immunity to tort claims.*

A board of education does not waive governmental immunity by participating in the North Carolina School Boards Trust ("NCSBT" or "the Trust"). *See, e.g., Willett v. Chatham Cnty. Bd. of Educ.*, 176 N.C. App. 268, 269, 625 S.E.2d 900, 901-02 (2006); *Ripellino*, 158 N.C. App. at 428-29, 581 S.E.2d at 92-93; *Lucas*, 154 N.C. App. at 363, 573 S.E.2d at 542.

Here, the Board is immune from suit because it has not purchased liability insurance and therefore has not waived its immunity. Rather, the Board has elected to participate in the Trust, which does not meet the requirements necessary to waive immunity under N.C. Gen. Stat. § 115C-42. Indeed, the language of the Board's agreement with the Trust expressly states that:

> The NCSBT Coverage Agreement is *not* a contract of insurance by a company or corporation duly licensed and authorized to execute insurance contracts in this State or by a qualified insurer as determined by the Department of Insurance. Therefore, the NCSBT Coverage Agreement expressly is *not* considered a waiver of governmental immunity as provided in N.C.G.S. §115C-42.

(Def. Board's Mot. To Dismiss, Ex. 1 Attachment 1 at 1 (hereinafter "Coverage Agreement") (emphasis added).) Further, the Board's Finance Officer Laurie Leary has confirmed that the Board has not purchased or otherwise secured any liability insurance coverage or risk protection for claims other than that which it has obtained by virtue of its participation in the Trust. (Def. Board's Mot. To Dismiss, Ex. 2.) Therefore, the Board has not waived its immunity. *See Irving*,

2013 WL 5508370, at *1-2 (upholding trial court's grant of Rule 12(b)(1) and (b)(2) motion to dismiss negligence claims where supporting affidavit indicated that policy was not intended to waive school board's governmental immunity). Accordingly, the Board is immune from suit in tort, and Plaintiffs' negligent training/supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, and libel *per se* claims against the Board must be dismissed.

> B.      The Board has not waived its immunity from Plaintiffs' claims through the Trust's excess insurance because their claims are excluded under the Coverage Agreement.

Even in circumstances where a board of education has waived its governmental immunity through the purchase of insurance or re-insurance, "such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42. It is well-settled that governmental entities, such as local boards of education, retain governmental immunity to the extent that exclusions from coverage exist. *See, e.g., Patrick v. Wake Cnty. Dept. of Soc. Servs.*, 188 N.C. App. 592, 655 S.E.2d 920 (2008); *Herring*, 137 N.C. App. at 688-89, 529 S.E.2d at 464; *Beatty v. Charlotte-Mecklenburg Bd. of Educ.*, 99 N.C. App. 753, 755, 394 S.E.2d 242, 244 (1990) ("unless the negligence or tort is covered by the insurance policy, sovereign immunity has not been waived by the Board or its agents"); *Overcash*, 83 N.C. App. at 23, 348 S.E.2d at 526. In such cases, courts strictly construe exclusionary clauses against waiver of immunity. *Herring*, 137 N.C. App. at 689, 529 S.E.2d at 464; *Overcash*, 83 N.C. App. at 25-26, 348 S.E.2d at 527; *Beatty*, 99 N.C. App. at 756, 394 S.E.2d at 244-45. Thus, if the plaintiff alleges claims excluded from coverage under the governmental entity's policy, there is no waiver of immunity. *Patrick*, 188 N.C. App. at 596, 655 S.E.2d at 923 ("A governmental entity does not waive sovereign immunity if the action brought against [it] is excluded from coverage under [its] insurance policy."); *Lyles v. City of*

*Charlotte*, 344 N.C. 676, 682, 477 S.E.2d 150, 154 (1996). "In determining whether the provisions of a liability insurance policy provide coverage for a tort action, our courts apply the 'comparison test,' thereby requiring the policy provisions to be analyzed and compared with the allegations in the pleadings." *Herring*, 137 N.C. App. at 686, 529 S.E.2d 463 (citing *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986)).

The Board's Coverage Agreement with the Trust includes reference to "Excess Insurance Limits" of $850,000 (*see* Coverage Agreement at 1-2), and Plaintiffs may contend that this "excess insurance" constitutes a waiver of the Board's immunity. However, the Trust's participation in excess insurance does not change the conclusion that the Board is immune from the current tort claims, because Plaintiffs' underlying allegations are clearly excluded by the Coverage Agreement and, therefore, the excess insurance limits are not triggered.

        1.     *Because the Coverage Agreement excludes claims "in connection with" sexual misconduct, the Board has not waived its immunity to Plaintiffs' negligence and negligent training and supervision claim in Counts VII and VIII of the Amended Complaint.*

Plaintiffs' claims for negligence and negligent supervision and training against the Board are excluded under multiple other provisions of the Coverage Agreement and are not subject to excess insurance. Plaintiffs' underlying allegations for their negligence claim is that the Board's failure to supervise resulted in "three (3) male students engag[ing] in sexual activity with Plaintiff L.B." and T.W. engaging in a criminal offense by distributing a video of the activity. (¶¶ 212, 213.) Similarly, their alleged negligent supervision and training claim is based on alleged harm that "Plaintiff L.B. and other students were left unsupervised during the school trip and engaged in illegal activities and prohibited sexual conduct." (¶ 229.)

However, the Coverage Agreement excludes "any Claim, arising out of or in connection with, in whole or in part, sexual acts . . . sexual assault, or sexual misconduct of any kind" and

26

"any Claim (other than a Personal Injury Claim), arising out of or in connection with, in whole or in part: . . . criminal acts."  (Coverage Agreement at 7, 14, Exclusions 12, 23.)  Moreover, there is no excess insurance for Sexual Acts and Abuse Liability Claims or for claims involving criminal acts.  (*Id.* at 1, 6.)  In other cases involving the Trust's coverage, courts have concluded the sexual acts exclusion "precludes coverage for claims related to improper sexual misconduct" and that the Board at issue "[did] not have excess coverage" for such claims.  *See J.W.*, 2012 WL 4425439, at *12.  *See also Craig v. New Hanover Bd. of Educ.*, 185 N.C. App. 651, 654, 648 S.E.2d 923, 925 (2007), *rev'd on other grounds*, 363 N.C. 334, 335-36, 678 S.E.2d 351, 353 (2009) (holding that school board had not waived immunity under excess insurance policy containing an exclusion for "sexual acts, sexual molestation, sexual harassment, sexual assault or sexual misconduct of any kind"); *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 703 (E.D.N.C. 2009) (rejecting plaintiff's argument that excess insurance waived the board of education's immunity because "[t]he Agreement [between NCSBT and board of education] specifically excludes from its excess insurance 'any [c]laim arising out of or in connection with ... willful violation of any law [or] sexual acts, sexual molestation, sexual harassment, sexual assault, or sexual misconduct of any kind.'").

Because Plaintiffs have alleged the Board's negligence and negligent training/supervision resulted in both criminal and sexual activity, Plaintiffs' allegations against the Board fall within the Coverage Agreement's exclusions for claims "in connection with" "sexual assault, or sexual misconduct" and "criminal acts."  As a result, the Board has not waived its immunity from claims connected with such alleged acts.

> 2. *Because the Coverage Agreement excludes NIED and IIED claims, the Board has not waived its immunity to such claims raised in Counts IX and X of the Amended Complaint.*

27

Plaintiffs also attempt to assert claims for negligent infliction of emotional distress and intentional infliction of emotional distress against the Board, alleging the Board's "negligence was a proximate cause of Plaintiff L.B.'s severe emotional distress" and that "the School District engaged in extreme and outrageous conduct," was "recklessly indifferent to the likelihood it would cause severe emotional distress to Plaintiff L.B and K.B.," and "in fact caused severe emotional distress." (¶¶ 236, 241-244.) However, the Coverage Agreement does not apply to "any Claim for intentional infliction of emotional distress or negligent infliction of emotional distress" "whether actual or alleged," and "neither the Fund nor any Excess Insurer will have an obligation to pay damages." (*See* Coverage Agreement at 9-10, Exclusion 28.) Because intentional infliction of emotional distress and negligent infliction of emotional distress have been excluded from the Coverage Agreement, the excess insurer does not have an obligation to pay for such damages, and the Board has not waived its immunity from these claims. *See J.W. v. Johnston Cnty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439, *11 (E.D.N.C. Sept. 24, 2012) (finding the board of education's coverage agreement with NCSBT "excluded claims 'for intentional infliction of emotional distress or negligent infliction of emotional distress'. . .[and] explicitly states that the NCSBT '*nor any Excess Insurer* will have an obligation to pay damages'" and holding "the Board does not have excess coverage for claims of intentional infliction of emotional distress and negligent infliction of emotional distress, and the Board has not waived governmental immunity").

        3.    *Because the Coverage Agreement excludes claims "in connection with" "oral or written publication of material, if done with knowledge of its falsity," the Board has not waived its immunity to Plaintiffs' defamation and libel per se claims in Counts XI and XII of the Amended Complaint.*

Plaintiffs' claims for defamation and libel per se against the Board are also excluded under the Coverage Agreement. In support of their defamation claim, Plaintiffs allege the Board

28

"defamed Plaintiff L.B. when, upon information and belief, it falsely communicated that L.B. was guilty of committing sexual harassment." (¶ 248.) Plaintiffs further allege Defendants "published [these statements] with knowledge and/or reckless disregard of whether it was false" and that "Defendants' defamatory statements were made with malicious, wanton and reckless indifference to the truth." (¶¶ 250-251.) In support of their libel per se claim, Plaintiffs allege that the written statement that L.B. had engaged in sexual harassment was "libelous on its face as Defendants knew, or had reason to know, that the Plaintiff L.B. did not sexually harass [others]," "[a]t the time of the publication, Defendants either knew the statement was false or failed to exercise ordinary care to determine whether the statement was false," and that damages can be presumed "by the Defendant with the knowledge that the statement was false or with reckless disregard for its truth or falsity." (¶¶ 260, 263, 267.)

In short, Plaintiffs have alleged the Board acted with knowledge or reckless disregard that the information at issue was false. Such allegations, however, fall squarely within the exclusion of the Coverage Agreement for "any Claim for Personal Injury[9] arising out of or in connection with, in whole or in part, (a) dishonest, fraudulent, or criminal acts; (b) acts of reckless or deliberate indifference; or (c) oral or written publication of material, if done with knowledge of its falsity." (Coverage Agreement at 8, Exclusion 13.) While there are some exceptions to this exclusion, there is no excess insurance for any of the claims that fall within the underlying exclusion applicable to claims involving dishonest acts, reckless acts, or acts involving publication of materials. (Id.) As a result, the Board has not waived its immunity from claims based on such defamation and libel allegations.

---

[9] "Personal Injury" is defined to include an injury other than a bodily injury that arises out of "libel, slander, defamation of character." (Coverage Agreement at 5.)

Finally, Plaintiffs also see punitive damages in their Amended Complaint.  However, punitive damages are not available against a board of education as a matter of law.  *See, e.g.*, *Ripellino*, 158 N.C. App. at 431 (holding that a county board of education, as a governmental entity, was immune from punitive damages).  Thus, to the extent Plaintiffs are permitted to proceed on any claims, their claims for punitive damages against the Board should be dismissed.

## CONCLUSION

Plaintiffs have failed to state claim upon which relief may be granted against the Board for violations of Title IX, Section 1983, and the North Carolina Whistleblower Act.  In addition, the Board's participation in the Trust does not waive its governmental immunity from Plaintiffs' negligence or tort claims.  For the reasons stated above, the Board respectfully requests that its Motion to Dismiss this action be granted and that Plaintiffs' claims against it be dismissed with prejudice.

This the 6th day of March 2017.

Respectfully submitted,

/s/ *Melissa J. Michaud*
Deborah R. Stagner (N.C. State Bar No. 24543)
Melissa J. Michaud (N.C. State Bar No. 39919)

THARRINGTON SMITH, L.L.P.
150 Fayetteville Street, Suite 1800 (27601)
Post Office Box 1151
Raleigh, North Carolina  27602-1151
Telephone:  (919) 821-4711
Fax:  (919) 829-1583
E-mail:  dstagner@tharringtonsmith.com
           mmichaud@tharringtonsmith.com
*Attorneys for Defendants Edgecombe Board of*
*Education and John Farrelly*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BOARD'S MOTION TO DISMISS was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such to the following:

Stacey Gahagan
The Gahagan Law Firm, PLLC
3326 Durham Chapel Hill Blvd, Suite 210-C
Durham, NC 27707
stacey@gahaganlaw.com

Charles L. McLawhorn, Jr.
McLawhorn & Associates, PA
PO Box 8188
Greenville, NC 27835
cmclawhorn@mclawhornlaw.com
*Attorneys for Plaintiffs*

Donna Rascoe
CRANFILL SUMNER & HARTZOG, LLP
5420 Wade Park Boulevard, #300
Raleigh, NC 27607
drascoe@cshlaw.com
*Attorneys for Defendants Marc Whichard, Craig Harris, Bill Strother, Alaina Ritter, Alyssa Parrish-Stafford, Dara Harmon, Miles Stafford and Rebecca Sugg*

This the 6th day of March 2017.

                                        /s/ *Melissa J. Michaud*
                                        Deborah R. Stagner (N.C. State Bar No. 24543)
                                        Melissa J. Michaud (N.C. State Bar No. 39919)
                                        *Attorneys for Defendants Edgecombe Board of*
                                        *Education and John Farrelly*
                                        THARRINGTON SMITH, L.L.P.
                                        150 Fayetteville Street, Suite 1800 (27601)
                                        Post Office Box 1151
                                        Raleigh, North Carolina 27602-1151
                                        Telephone: (919) 821-4711
                                        Fax: (919) 829-1583
                                        E-mail: dstagner@tharringtonsmith.com
                                                mmichaud@tharringtonsmith.com

31