IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-271-D

KIMBERLY BIGGS, in her individual          )
capacity and as guardian ad litem of       )
L.B., and L.B.,                            )
                                           )
            Plaintiffs,                     )
                                           )
      v.                                    )          **ORDER**
                                           )
EDGECOMBE COUNTY PUBLIC                      )
SCHOOLS BOARD OF EDUCATION, et al., )
                                           )
                                           )
            Defendants,                     )

On November 1, 2016, L.B., a minor, ("L.B."), and Kimberly Biggs, in her individual

capacity and as lawful guardian ad litem of L.B. ("K.B.") (collectively "plaintiffs") filed a complaint

against the Edgecombe County Public School Board of Education ("Board"), John Farrelly,

Superintendent of Edgecombe County Public Schools ("Farrelly"), Marc Whichard, Assistant

Superintendent and Title IX Coordinator of Edgecombe County Public Schools ("Whichard"), Craig

Harris, Southwest Edgecombe High School Principal ("Harris"), Billy Strother, Southwest

Edgecombe High School Assistant Principal ("Strother"), Alyssa Parrish-Stafford, Southwest

Edgecombe High School Teacher ("Parrish-Stafford"), Dara Harmon, Southwest Edgecombe High

School Media Coordinator ("Harmon"), Miles Stafford, Edgecombe County Public School Teacher

("Stafford"), and Rebecca Sugg, Southwest Edgecombe High School Counselor ("Sugg"), alleging

twelve causes of action arising out of disciplinary action taken against L.B. for her alleged sexual

harassment of two male students [D.E. 1]. On January 19, 2017, before service on any defendant,

plaintiffs amended their complaint [D.E. 10]. On March 6, 2017, the Board moved to dismiss the amended complaint for lack of jurisdiction and for failure to state a claim, [D.E. 37], and filed two affidavits regarding the Board's insurance coverage [D.E. 37-1, 37-2] and a memorandum in support [D.E. 38]. On the same day, Farrelly moved to dismiss the claims against him for lack of jurisdiction and for failure to state a claim [D.E. 39] and filed a memorandum in support [D.E. 40]. On March 27, 2017, Harmon, Harris, Parrish-Stafford, Ritter, Stafford, Strother, Sugg, and Whichard moved to dismiss the claims against them for lack of jurisdiction and for failure to state a claim [D.E. 45] and filed a memorandum in support [D.E. 46]. On May 17, 2017, plaintiffs responded in opposition to the three motions to dismiss, [D.E. 54], moved for leave to file a second amended complaint, [D.E. 55], attached a copy of their proposed second amended complaint [D.E. 55-1], and filed a memorandum in support [D.E. 56]. On May 31, 2017, the Board and Farrelly replied [D.E. 59]. Thereafter, the Board and Farrelly responded in opposition to the motion for leave to amend, [D.E. 60], as did Harris, Parrish-Stafford, Ritter, Stafford, Strother, Sugg, and Whichard [D.E. 61].

On August 14, 2017, the court granted plaintiffs' motion for leave to amend, and denied as moot the motions to dismiss the amended complaint [D.E. 62]. Plaintiffs filed their second amended complaint, adding G.W. Carver Elementary School Principal Shannon Castillo ("Castillo"), as a defendant in her individual and official capacities and alleging claims against the Board, Farrelly, in his individual and official capacities, Whichard, in his individual and official capacities, Harris, in his individual and official capacities, Strother, in his individual and official capacities, Ritter, in her individual and official capacities, Parrish-Stafford, in her individual and official capacities, Harmon, in her individual and official capacities, Stafford, in his individual and official capacities, and Sugg, in her individual and official capacities [D.E. 64].

On September 15, 2017, the Board moved to dismiss the second amended complaint for lack

2

jurisdiction and for failure to state a claim [D.E. 67] and filed a memorandum in support [D.E. 68]. On the same day, Farrelly moved to dismiss the second amended complaint for lack of jurisdiction and for failure to state a claim [D.E. 69] and filed a memorandum in support [D.E. 70]. Also on the same day, Harmon, Harris, Parrish-Stafford, Ritter, Stafford, Stretcher, Sugg, and Whichard answered the second amended complaint [D.E. 71]. On October 6, 2017, plaintiffs responded in opposition to the motions to dismiss [D.E. 72, 73] and filed memoranda in support [D.E. 74, 75]. On October 20, 2017, the Board replied [D.E. 76]. On the same day, Farrelly replied [D.E. 77].

On February 7, 2018, the clerk of court notified plaintiffs that they failed to make service on Castillo within the 90 day limit [D.E. 80]. See Fed. R. Civ. P. 4(m). On February 21, 2018, plaintiffs responded [D.E. 81]. On March 19, 2018, Castillo moved to dismiss for lack of jurisdiction [D.E. 84] and filed a memorandum in support [D.E. 85]. On the same day, Castillo answered the second amended complaint [D.E. 86]. On April 3, 2018, plaintiffs moved to allow service after the deadline [D.E. 87] and filed a memorandum in support [D.E. 88]. On April 6, 2018, plaintiffs responded in opposition to Castillo's motion to dismiss [D.E. 89] and filed a memorandum in support [D.E. 90]. On April 20, 2017, Castillo responded in opposition to plaintiffs' motion to allow service after the deadline [D.E. 91]. On the same day, Castillo replied to plaintiffs' opposition to her motion to dismiss [D.E. 92].

As explained below, the court grants in part and denies in part the Board's motion to dismiss. Plaintiffs' Title IX claims against the Board and K.B.'s claim against the Board under the North Carolina Whistleblower Act survive. The court dismisses all other claims against the Board. The court grants in part and denies in part Farrelly's motion to dismiss. Plaintiffs' 42 U.S.C. § 1983 claims against Farrelly and K.B.'s claim against Farrelly under the North Carolina Whistleblower Act survive. The court dismisses all other claims against Farrelly. Finally, the court grants Castillo's

3

motion to dismiss, and denies plaintiffs' motion to allow service after the deadline.

## I.

L.B. is an academically gifted student at Southwest Edgecombe High School who achieved several honors, accolades, and awards including acceptance to North Carolina Governor's School, designation as Chief Junior Marshal in recognition of possessing the top grade point average in her class, and membership in the National Honor Society. See Sec. Am. Compl. [D.E. 64]. ¶¶ 49–55. "On May 12, 2016, L.B. embarked on a four day school-sponsored field trip to Washington, D.C." with the history club from Southwest Edgecombe High School. Id. ¶ 56. The chaperones on the field trip allowed the students to roam unsupervised at times during the trip. See id. ¶ 60. During some of this unsupervised time, three male students, ("D.M.", "T.W.", and "Orozco") obtained alcohol and tobacco. See id. ¶ 65. L.B. was concerned about the well being of her male friends because she believed they also intended to consume alcohol and purchase drugs. See id. ¶ 67. L.B. left her motel room to check on them. L.B. entered their room and saw those three males and two other male students drinking alcohol and some possessing marijuana. See id. After about an hour, the two other males left the room. Id. ¶ 68. L.B. stayed in the room with D.M., T.W., and Orozco because "her roommates were already asleep, and she was not provided a room key." Id. ¶ 69.

At about midnight, L.B. laid down on a bed alone and fully clothed and turned away from the others to go to sleep. Id. ¶ 70. Orozco attempted to remove L.B.'s clothing despite her protests, including a direct plea to D.M. See id. ¶¶ 70–73. Both D.M. and Orozco assaulted L.B. and removed "her clothing while she resisted and screamed to turn the lights off." Id. ¶ 74. Eventually L.B. was able to convince them to use protection, but was ultimately unable to escape or otherwise defuse the situation. Orozco and D.M. raped L.B. while T.W., "without L.B.'s knowledge or consent" used his phone to record the incident. See id. ¶¶ 75–76. T.W. distributed this video via

4

Snapchat, a phone application which allows users to share photos, text, and videos one-on-one or to publish content to a larger audience of peers. See id. ¶ 76. T.W. then announced "I'm next" and indicated his intention to assault L.B. See id. ¶ 77. "Shortly thereafter, one of the students actually assigned to the room knocked on the door" and L.B. was able to get dressed and leave. See id. ¶ 78.

"The following day, May 13, 2016, Orozco expressed concern to [L.B.] that [she] might report that the sexual encounter was not consensual, and Orozco might be convicted of rape. He pretended not to remember the details and then proceeded to make jokes about the sexual encounter." Id. ¶ 79. That afternoon, school officials and local police in Virginia investigated "rumors of underage drinking." See id. ¶¶ 81–82. The local police cited D.M. and Orozco for underage possession of alcohol. See id. ¶ 82. School officials removed D.M. and Orozco from the field trip and suspended them for ten days. See id.

Once school administrators heard rumors about a sexual encounter, administrators began to investigate and questioned L.B. See id. ¶¶ 88–93. Administrators encouraged L.B. to "admit to any involvement in any sexual activity[,]" but did not inform L.B. that she was the target of the investigation. See id. ¶¶ 94–95. L.B. admitted that she engaged in sexual activity on the trip, and was left alone to write a statement, during which time L.B. contacted D.M. with a phone messaging application. See id. ¶¶ 96–99. In the statement, L.B. "paraphrased the events of the evening, while trying to protect the inebriated students who coerced her to have sex, recorded her without permission, and then published the video to her classmates." Id. ¶ 101. Plaintiffs allege that taking L.B.'s statement was the full extent of the investigation that school administrators conducted, that school administrators did not question or punish any of the male perpetrators, and that school administrators made no attempt to corroborate or to further investigate the incident. See id. ¶ 106. Whichard, who is the district Title IX coordinator, shamed L.B. as a result of the May 12 incident.

5

See id. ¶ 107. School administrators found L.B. to have had "sexual intercourse with two male students and sexual contact with one additional male student while on a school fieldtrip" and that she committed "Level Three Sexual Harassment." Id. ¶¶ 114, 116–117 (quotations and alteration omitted). Administrators punished L.B. with a ten-day suspension, and the loss of several titles, honors, and accolades, and a ban from certain extracurricular activities. See id. ¶¶ 100, 113. L.B.'s mother, K.B., appealed this determination. See id. ¶¶ 119–128.

The school administrators did not punish the male students for their sexual behavior, and the male students did not lose titles, accolades, awards, or the ability to participate in extracurricular activities. See id. ¶ 129. K.B. continued to appeal the decision concerning L.B., speaking with numerous school officials including the counselor, principal, the Title IX coordinator, the Superintendent, and eventually the Board of Education. Each failed to investigate further, upheld the punishments, and permitted additional sexual harassment of L.B. See id. ¶¶ 130–229.

K.B. and L.B. filed this action seeking relief under Title IX and alleging that the school targeted L.B. for selective enforcement and disproportionate punishment because of her gender and retaliated against L.B. and K.B. They also seek relief under 42 U.S.C. § 1983 and state law.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759

6

F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Plaintiffs allege that the Board violated Title IX by (1) conducting an investigation that reached an erroneous outcome and singling out L.B. for punishment based on her gender, and (2) selectively enforcing disciplinary proceedings against L.B. based on her gender. See Sec. Am. Comp. ¶¶ 230–50. "Title IX bars the imposition of [school] discipline where gender is a motivating factor in the decision to discipline." Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994). Title IX claims concerning school disciplinary proceedings generally fall within two categories. In the first, a plaintiff alleges that she was actually innocent and "wrongly found to have committed an offense." Id. In the second, a plaintiff "alleges selective enforcement." Id. A selective enforcement

7

claim "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." Id.[1]

To state a claim for erroneous outcome discrimination, a plaintiff must plausibly allege

(1) a procedurally or otherwise flawed proceeding; (2) that has led to an adverse and erroneous outcome; and (3) particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. To satisfy the third element, a plaintiff must do more than merely rely on a conclusory allegation of gender discrimination.

Doe v. Salisbury Univ., 123 F. Supp. 3d 748, 766 (D. Md. 2015) (quotations and citations omitted); see Doe v. Washington & Lee Univ., No. 6:14–CV–00052, 2015 WL 4647996, at *9–10 (W.D.Va. Aug. 5, 2015) (unpublished).

To state a selective enforcement claim, a plaintiff must plausibly allege that, independent of whether a plaintiff was guilty or innocent of the charge leveled against her, "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." Yusuf, 35 F.3d at 715. A plaintiff also must plausibly allege that she was similarly situated to a student of a different gender that the school "treated more favorably." Doe v. Univ. of the S., 687 F. Supp. 2d 744, 756–57 (E.D. Tenn. 2009). A plaintiff also must plausibly allege that gender was a motivating factor in the decision. See Yusuf, 35 F.3d at 715.

In seeking dismissal, the Board argues that (1) plaintiffs failed to identify a "disciplinary proceeding" that led to an erroneous outcome, (2) the outcome was not erroneous because L.B. sexually harassed D.M. and Orozco, and (3) plaintiffs failed to plausibly allege that gender bias was

---

[1] Courts look to case law interpreting Title VII when evaluating claims brought under Title IX because of their similar language and purpose. See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 636–37 (1999); Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007) (en banc).

a motivating factor. See [D.E. 68] 10–13. The Board also argues that Principal Harris, the person who made the initial findings of fact and who decided L.B.'s punishment, acted within his statutory rights under N.C. Gen. Stat. § 115C-390.5 after completing an informal hearing and issuing oral or written notice. See [D.E. 68] 11.

Plaintiffs plausibly allege that the process of gathering evidence, finding facts, deciding on a punishment, and the appeals process constitute a "disciplinary proceeding" under Title IX. Furthermore, plaintiffs plausibly allege that the proceeding was procedurally defective because the fact finders failed to do any investigation beyond obtaining an involuntary written confession from L.B.

As for the Board's contention that the outcome was not erroneous because L.B. sexually harassed D.M. and Orozco, the school code of conduct states that students may not engage in "behavior that is immoral, indecent, lewd, disreputable or of an overly sexual nature." [D.E. 10-7] 1. Plaintiffs plausibly allege that L.B. did not knowingly violate this policy. Rather, L.B.'s involvement was as a sexual assault victim. See Sec. Am. Compl. ¶¶ 70–86. Thus, plaintiffs plausibly allege that the outcome was erroneous.

As for the Board's contentions that plaintiffs do not plausibly allege that gender was the motivating factor in Harris's decision as to L.B. versus the male students who allegedly sexually assaulted and raped her, plaintiffs plausibly allege that L.B. was the only student who was questioned about the sexual assault, while the male students were not, see id. ¶¶ 116, 120, 134, that school officials never reported the sexual assault to local law enforcement authorities, see id. ¶¶ 122–124, 196–198, that the male students were punished less severely and only for the alcohol infractions but not for the sexual assault (or even for allegedly consensual sexual contact). Furthermore, plaintiffs plausibly allege that the male students did not suffer the removal of any titles, accolades, awards, or

9

loss of extracurricular activities, see id. ¶¶ 129, 199–206, that school administrators shamed L.B. for the sexual assault and rape and promoted a culture of reputational harm, see id. ¶¶ 107, 172, and that school administrators failed to stop further sexual harassment of L.B. by one of her attackers during the 2016–17 school year. See id. ¶¶ 207–210.

Taken together, plaintiffs plausibly allege that the erroneous outcome and the selective enforcement against L.B. resulted from impermissible gender bias. Plaintiffs also plausibly allege that school administrators singled out L.B. for this treatment because of their conceptions about how a female should act sexually versus how a male should act sexually. See Shaeigan v. H.D. Supply, Inc., No. 3:12-CV-762-DJH-CHL, 2016 WL 6518634, at *3 (W.D. Ky. Nov. 1, 2016) (unpublished); Rachuna v. Best Fitness Corp., No. 1:13-CV-365, 2014 WL 1784446, at *1, 7 (W.D. Pa. May 5, 2014) (unpublished). Plaintiffs also plausibly allege that, due to her gender, L.B. was singled out during the investigation, that she was singled out for punishment, and that she was singled out for shaming. See Sec. Am. Compl. ¶¶ 95–112. These allegations reveal a plausible motivation of gender bias and are sufficient to state a claim under Title IX. Thus, the court declines to dismiss the Title IX claims against the Board.

### B.

Plaintiffs allege that the Board retaliated against L.B. and K.B. for protected reporting under Title IX. See Sec. Am. Compl. ¶¶ 251–263. Specifically, plaintiffs allege that the Board retaliated against L.B. and K.B. after they reported the sexual assault and reported that L.B. had been the victim of sexual harassment. Id. Plaintiffs allege that adverse actions included stripping L.B. of honors and accolades and denying L.B. access to certain extracurricular activities. See id.

Title IX prohibits "[r]etaliation against a person because that person complained about sex discrimination." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005); see Aleman v.

10

Chugach Support Servs., 485 F.3d 206, 214 (4th Cir. 2007). To plausibly allege retaliation, a plaintiff must claim (1) engagement in a protected activity; (2) an adverse action; and (3) a causal link between the protected activity and the adverse action. See Jackson, 544 U.S. at 173; Salisbury Univ., 123 F. Supp. 3d at 769.

Plaintiffs allege that "each time Plaintiff K.B. engaged in a protected activity pursuant to Title IX, Defendants increased Plaintiff L.B.'s punishment" which they assert establishes a "clear causal connection" between the protected activities and the punishments. See Sec. Am. Compl. ¶¶ 251–63. Plaintiffs have plausibly alleged a retaliation claim against the Board in violation of Title IX. Thus, the court declines to dismiss the Title IX retaliation claim against the Board.

C.

Plaintiffs make claims under 42 U.S.C. § 1983 against the Board for violations of the Fourteenth Amendment. See Sec. Am. Compl ¶¶ 264–275. To state a claim under 42 U.S.C. § 1983 against the Board, plaintiffs must plausibly allege (1) a constitutional injury occurred as a result of its employee's conduct; (2) that the Board had a policy or custom that amounted to a deliberate indifference to the deprivation of plaintiffs' Fourteenth Amendment rights; and (3) this policy or custom caused the alleged constitutional injury. See, e.g., City of Canton v. Harris, 489 U.S. 378, 388–92 (1989); Perry v. Pamlico Cty., 88 F. Supp. 3d 518, 541 (E.D.N.C. 2015); Smith v. Atkins, 777 F. Supp. 2d 955, 966–67 (E.D.N.C. 2011).

Not every municipal official's action or inaction represents municipal policy. Liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986); see Riddick v. Sch. Bd., 238 F.3d 518, 523 (4th Cir. 2000); Perry, 88 F. Supp. 3d at 541. Furthermore, even if a section 1983 plaintiff can identify the requisite final authority, a municipality is not liable simply

11

because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." Riddick, 238 F.3d at 524. Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (emphasis omitted); Harris, 489 U.S. at 389; Riddick, 238 F.3d at 524. Thus, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action [or inaction]." Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, she also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404. Deliberate indifference and causation are separate requirements. See id.

Plaintiffs allege improper investigation and inappropriate bias on the part of individual school officials, but do not plausibly allege that this alleged conduct resulted from an official Board custom or policy. See Brown, 520 U.S. at 403–04; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Carter, 164 F.3d at 218. Despite plaintiffs' arguments to the contrary, claims of inadequate training or a general "tolerance or acquiescence for federal rights violations" are not enough to plausibly allege that the Board violated section 1983. See Brown, 520 U.S. at 407–09; Harris, 489 U.S. at 391; Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) (plurality opinion); Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Buffington v. Baltimore Cty., 913 F.2d 113, 122–23

(4th Cir. 1990); Smith, 777 F. Supp. 2d at 967–68; Hill v. Robeson Cty., 733 F. Supp. 2d 676, 686–88 (E.D.N.C. 2010); Doe v. New Philadelphia Pub. Schs. Bd. of Educ., 996 F. Supp. 741, 747 (N.D. Ohio 1998). Accordingly, the court dismisses plaintiffs' section 1983 claims against the Board.

III.

Plaintiffs allege several causes of action under North Carolina tort law against the Board. See Sec. Am. Compl. ¶¶ 284–382. Specifically, plaintiffs allege causes of action for negligence, negligent infliction of emotional distress ("NIED"), intentional infliction of emotional distress ("IIED"), defamation, and libel per se. See id.[2] The Board moves to dismiss these claims based on governmental immunity. See [D.E. 68] 19–25.

The court considers the Board's motion to dismiss plaintiffs' North Carolina tort claims against the Board for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2). See Fed. R. Civ. P. 12(b)(1), (2). When analyzing North Carolina law, this court must predict what the Supreme Court of North Carolina would do if faced with the issue. In doing so, the court may consider cases from the Supreme Court of North Carolina, the North Carolina Court of Appeals, treatises, and the practices of other states. See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005); Teague v. Bakker, 35 F.3d 978, 991 (4th Cir. 1994).

Under North Carolina law, governmental immunity presents a question of jurisdiction. See, e.g., Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 701 (E.D.N.C. 2009); Myers v.

---

[2] Plaintiffs incorrectly numbered the counts in the second amended complaint. It appears that plaintiffs may have deleted "count V" without renumbering counts VI–XI. The court refers to claims by cause of action instead of number.

13

McGrady, 360 N.C. 460, 465 n.2, 628 S.E.2d 761, 765 n.2 (2006); Teachy v. Coble Dairies, Inc., 306 N.C. 324, 326–28, 293 S.E.2d 182, 184 (1982). The Supreme Court of North Carolina has not resolved whether governmental immunity presents a defense to subject-matter jurisdiction or personal jurisdiction. See Myers, 360 N.C. at 465 n.2, 628 S.E.2d at 765 n.2. Thus, the court evaluates the Board's motion to dismiss under both standards.

A.

Under Rule 12(b)(1), a plaintiff must prove subject-matter jurisdiction. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). A court regards "the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact [concerning jurisdiction] exists." Richmond, 945 F.2d at 768.

Under Rule 12(b)(2), a plaintiff must prove personal jurisdiction. See, e.g., Mylans Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993). If the court resolves the motion on the basis of papers alone, a plaintiff must show only a prima facie case of personal jurisdiction. Id. at 60. The court "must draw all reasonable inferences arising from the [plaintiff's] proof, and resolve all factual disputes, in the plaintiff's favor." Id.

Under North Carolina law, a county board of education "may be sued only when and as authorized by statute." Smith v. Hefner, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952); see Benton v. Bd. of Educ. of Cumberland Cty., 201 N.C. 653, 161 S.E. 96, 97 (1931) (recognizing the governmental immunity of public schools); Seipp v. Wake Cty. Bd. of Educ., 132 N.C. App. 119,

14

121, 510 S.E.2d 193, 194 (1999) ("A county or city board of education is a governmental agency, and therefore is not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority."); Hallman v. Charlotte-Mecklenburg Bd. of Educ., 124 N.C. App. 435, 437, 477 S.E. 2d 179, 180 (1996); Lindler v. Duplin Cty. Bd. of Educ., 108 N.C. App. 757, 761, 425 S.E.2d 465, 468 (1993); Overcash v. Statesville City Bd. of Educ., 83 N.C. App. 21, 22–23, 348 S.E.2d 524, 526 (1986). Governmental immunity in North Carolina is a "judge-made doctrine" that the legislature later recognized by statute. See Steelman v. City of New Bern, 279 N.C. 589, 594, 184 S.E.2d 239, 242 (1971). The doctrine "is firmly established" in North Carolina law and is "the public policy of the State." Id. at 594, 184 S.E.2d at 242. Thus, absent waiver, the Board enjoys governmental immunity concerning plaintiffs' state tort claims. See Lail ex rel. Jestes v. Cleveland Cty. Bd. of Educ., 183 N.C. App. 554, 561, 645 S.E.2d 180, 186 (2007); Craig ex rel. Craig v. New Hanover Bd. of Educ., 185 N.C. App. 651, 654–55, 648 S.E.2d 923, 925–26 (2007), rev'd on other grounds, 363 N.C. 334, 678 S.E.2d 351 (2009); Ripellino v. N.C. Sch. Bds. Ass'n, Inc., 158 N.C. App. 423, 428, 581 S.E.2d 88, 92 (2003); Lucas v. Swain Cty. Bd. of Educ., 154 N.C. App. 357, 361, 573 S.E.2d 538, 541 (2002); Seipp, 132 N.C. App. at 121, 510 S.E.2d at 194.

Plaintiffs contend that the Board waived its governmental immunity concerning the state tort claims by possessing liability insurance. Under North Carolina law, school boards are immune from tort claims unless they possess liability insurance. See N.C. Gen. Stat. § 115C-42; J.W. v. Johnston Cty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439, at *10–11 (E.D.N.C. Sept. 24, 2012) (unpublished) (collecting cases). The Board participates in the North Carolina School Boards Trust ("NCSBT"), but does not otherwise carry liability insurance which would waive its immunity. See Leary Aff. [D.E. 37-2] ¶¶ 5–6.

Plaintiffs argue that the Board's participation in the NCSBT, which provides excess liability insurance, waives the Board's immunity. See [D.E. 74] 28–30. North Carolina courts strictly construe statutes authorizing waiver of governmental immunity. See, e.g., Frye, 612 F. Supp. 2d at 702; Ripellino, 158 N.C. App. at 428, 581 S.E.2d at 92; Hallman, 124 N.C. App. at 438, 477 S.E.2d at 181. Participation in the NCSBT alone is not "liability insurance" within the meaning of the immunity statute. See Barrett v. Bd. of Educ. of Johnston Cty., 13 F. Supp. 3d 502, 514 (E.D.N.C. 2014), aff'd on other grounds, 590 F. App'x 208 (4th Cir. 2014) (per curiam) (unpublished); Johnston Cty. Bd. of Educ., 2012 WL 4425439, at *10–11; Frye, 612 F. Supp. 2d at 702–03; Craig, 185 N.C. App. at 653–54, 648 S.E.2d at 925; Jestes, 183 N.C. App. at 560–61, 645 S.E.2d at 185; Willett v. Chatham Cty. Bd. of Educ., 176 N.C. App. 268, 269, 625 S.E.2d 900, 901–02 (2006); Ripellino, 158 N.C. App. at 428–29, 581 S.E.2d at 92–93; Lucas, 154 N.C. App. at 361–62, 573 S.E.2d at 540–41. Thus, the Board's participation in the NCSBT does not provide a waiver of immunity.

The excess liability insurance policy obtained through the NCSBT waives immunity "only to the extent that said board of education is covered by the [excess] insurance policy." Johnston Cty. Bd. of Educ., 2012 WL 4425439, at *10 (alteration in original). The court has compared the alleged events in the second amended complaint with the policy. See Waste Mgt. of Carolinas, Inc. v. Pearless, Ins. Co., 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986); cf. [D.E. 37-1]. The court concludes that there is no excess insurance to indemnify the Board for "Sexual Acts and Abuse Liability" claims, and all other claims "arising out of or in connection with, in whole or in part, sexual acts, sexual molestation, sexual harassment, sexual assault, or sexual misconduct of any kind" are excluded under Exclusion 12 or Exclusion 23 of the policy. See [D.E. 37-1] 1–2, 7–8, 12, 14; cf. Sec. Am. Compl. ¶¶ 98, 123–24, 138, 149, 156, 158, 167, 185–89. Thus, the Board has not

16

waived it immunity concerning plaintiffs' tort claims. See Johnston Cty. Bd. of Educ., 2012 WL 4425439, at *12; Frye, 612 F. Supp. 2d at 703–04. Accordingly, the court dismisses those four claims against the Board for lack of jurisdiction.

## B.

Plaintiff K.B. is a state employee and seeks relief from the Board under the North Carolina Whistleblower Act. See Sec. Am. Compl. ¶¶ 276–83; N.C. Gen. Stat. § 126–84.[3] To state a claim, a plaintiff must plausibly allege "(1) that the plaintiff engaged in a protected activity, (2) that the defendant took adverse action against the plaintiff in his or her employment, and (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff." Newberne v. Dep't of Crime Control & Pub. Safety, 359 N.C. 782, 788, 618 S.E.2d 201, 206 (2005); N.C. Gen. Stat §§ 126-85–87.

K.B. alleges that the Board retaliated against K.B. in her state employment after K.B. made complaints about how the school administrators handled L.B.'s case. See Sec. Am. Compl. ¶¶

_____

[3] N.C. Gen. Stat. § 126-84 states:

(a) It is the policy of this State that State employees shall have a duty to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a State agency or State employee constituting any of the following:
    (1) A violation of State or federal law, rule or regulation.
    (2) Fraud.
    (3) Misappropriation of State resources.
    (4) Substantial and specific danger to the public health and safety.
    (5) Gross mismanagement, a gross waste of monies, or gross abuse of authority.
(b) Further, it is the policy of this State that State employees be free of intimidation or harassment when reporting to public bodies about matters of public concern, including offering testimony to or testifying before appropriate legislative panels.

N.C. Gen. Stat. § 126-84. In turn, N.C. Gen. Stat. § 126-85 protects state employees from retaliation, and N.C. Gen. Stat. § 126-86 creates a cause of action against the agency and any state employee who violates the Act.

276–83. K.B. has plausibly alleged a claim under the North Carolina Whistleblower Act against the Board. Thus, the court declines to dismiss this claim.[4]

## C.

Plaintiffs seek to recover punitive damages from the Board. See Sec. Am. Compl. p. 107. Plaintiffs, however, cannot recover punitive damages from the Board. See, e.g., Barnes v. Gorman, 536 U.S. 181, 184–89 (2002); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266–71 (1981); Mercer v. Duke Univ., 50 F. App'x 643, 644 (4th Cir. 2002) (per curiam) (unpublished); Frye, 612 F. Supp. 2d at 709; Crain v. Butler, 419 F. Supp. 2d 785, 793–94 (E.D.N.C. 2005); Ripellino, 158 N.C. App. at 431, 581 S.E.2d at 94. Thus, the court dismisses plaintiffs' request to recover punitive damages from the Board.

## IV.

Farrelly asks the court to dismiss the official capacity claims made against him. See [D.E. 70] 3–4. Plaintiffs respond that they did not make an official capacity claim against Farrelly and do not object to dismissal. See [D.E. 72] ¶ 1. Thus, the court dismisses any claim against Farrelly in official capacity.

Farrelly also asks the court to dismiss the individual capacity Title IX claim against him for failure to state a claim. As superintendent, Farrelly argues that he is not a "funding recipient" under Title IX. See [D.E. 70] 4. The court agrees and dismisses the Title IX claims against Farrelly in his individual capacity. See, e.g., Cox v. Sugg, 484 F.3d 1062, 1066 (8th Cir. 2007); Hartley v. Parnell, 193 F.3d 1263, 1270 (11th Cir. 1999); Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 611 (8th Cir. 1999); Smith v. Metro. Sch. Dist. Perry Twp., 128 F.3d 1014, 1021–28 (7th Cir. 1997). For the

---

[4] K.B. has also stated a claim under the North Carolina Whistleblower Act against Farrelly. See N.C. Gen. Stat. § 126-86.

18

same reasons, the court also dismisses plaintiffs' Title IX claims against Whichard, Harris, Strother, and Sugg.

Farrelly also asks the court to dismiss plaintiffs' section 1983 claim against him. "To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips, 572 F.3d at 180. Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell, 436 U.S. at 691–92; Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Farrelly argues that plaintiffs have failed to state section 1983 claims against him for either direct (i.e., personal) or supervisory liability. See [D.E. 70] 5–6. The court agrees that plaintiffs have not plausibly alleged a supervisory liability claim under section 1983 against Farrelly. See, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 121–30 (1992); Wilkins v. Montgomery, 751 F.3d 214, 226–27 (4th Cir. 2014); Randall v. Prince George's Cty., 302 F.3d 188, 206–07 (4th Cir. 2002); Riddick, 238 F.3d at 522–26; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989); Slakan v. Porter, 737 F.2d 368, 372–76 (4th Cir. 1984). As for plaintiffs personal liability claim under section 1983 against Farrelly, the court concludes that this claim ekes across the line from possible to plausible. See, e.g., Kentucky v. Graham, 473 U.S. 159, 166 (1985) (to establish personal liability in a section 1983 action, plaintiff must show that the official acting under color of state law caused the deprivation of a federal right); King v. Rubenstein, 825 F.3d 206, 223–25 (4th Cir. 2016); Tilson v. Forrest City Police Dep't, 28 F.3d 802, 811 (8th Cir. 1994); Williams v. Smith, 781 F.2d 319, 323–34 (2d Cir. 1986); Wright, 766 F.2d at 850.

19

Farrelly alleges public official immunity for the negligence and NIED claims. Public officials who are "engaged in the performance of governmental duties involving the exercise of judgment and discretion" are personally immune from liability for mere negligence. See Smith v. Hefner, 235 N.C. 1, 7, 68 S.E.2d 793, 787 (1952).

In opposition, plaintiffs claim that they plausibly allege that Farrelly's tortious conduct was "malicious[], willful[], or wanton[]." [D.E. 75] 4; see Sec. Am. Compl ¶¶ 171–74, 291, 334, 342. The court has reviewed the second amended complaint and disagrees with plaintiffs. Accordingly, the court dismisses the negligence and NIED claims against Farrelly based on public official immunity.

As for the IIED claim against Farrelly, plaintiffs must plausibly allege: (1) that Farrelly engaged in extreme and outrageous conduct; (2) that the conduct was intended to cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress. See Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). To be considered "extreme and outrageous," the conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); see Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 339–40 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished). Whether conduct qualifies as "extreme and outrageous" is a question of law for the court. See, e.g., Lenins v. K–Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Extreme and outrageous conduct "go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized community." Briggs v. Rosenthal, 73

N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985). North Carolina courts have set a high bar for extreme and outrageous conduct. See Howard, 262 F. Supp. 3d at 339–40; Dobson v. Harris, 134 N.C. App. 573, 578–579, 521 S.E.2d 710, 715 (1999), rev'd on other grounds, 352 N.C. 77, 530 S.E.2d 829 (2000).

Plaintiffs have not plausibly alleged that Farrelly engaged in extreme and outrageous conduct. Accordingly, the court dismisses the IIED claim against Farrelly.

As for the defamation and libel per se claim against Farrelly, under North Carolina law, a plaintiff asserting a defamation claim must plausibly allege that a defendant made "false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002); see Eshelman v. Puma Biotechnology, Inc., No. 7:16-CV-18-D, 2017 WL 514237, at *5 (E.D.N.C. Feb. 6, 2017) (unpublished), motion to certify appeal denied, No. 7:16-CV-18-D, 2017 WL 9440363 (E.D.N.C. May 24, 2017) (unpublished), and appeal dismissed, No. 17-1291, 2017 WL 3973936 (4th Cir. June 7, 2017) (per curiam) (unpublished); Lewis v. Rapp, 220 N.C. App. 299, 301–02, 725 S.E.2d 597, 600 (2012).

Whether a publication is libelous per se is a question of law. Ellis v. N. Star Co., 326 N.C. 219, 224, 388 S.E.2d 127, 130 (1990). Libel per se "is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt, or disgrace." Boyce & Isley, PLLC, 153 N.C. App. at 29, 568 S.E.2d at 898 (quotation omitted); see Lewis, 220 N.C. App. at 302, 725 S.E.2d at 600. The defamatory nature of a statement "must be susceptible of but one meaning" when "taken in the sense which is most obvious and natural and according to the ideas

21

that they are calculated to convey to those who see them." Flake v. Greensboro News Co., 212 N.C. 780, 195 S.E. 55, 60 (1938). Statements alleging "serious sexual misconduct" are presumed to injure and may constitute libel or slander per se. See Carey v. Piphus, 435 U.S. 247, 262 n.18 (1978); Diagnostic Devices Inc. v. Pharma Supply, Inc., No. 3:08–CV–149–RJC–DSC, 2009 WL 2998004, at *11 (W.D.N.C. Sept. 15, 2009) (unpublished). If a series of statements are by themselves not false, but are presented together in such a way that a reasonable audience of ordinary people would understand the statements to convey a defamatory message, the statements constitute libel per se. See Boyce & Isley, PLLC, 153 N.C. App. at 31–32, 568 S.E.2d at 898–90.

"Statements made in the course of a quasi-judicial proceeding are entitled to absolute privilege. Quasi-judicial proceedings include the actions of public administrative officers when they investigate facts, or ascertain the existence of facts, and draw conclusions from them, as the basis for their official action, and to exercise discretion of a judicial nature." Lanier Constr. Co. v. City of Clinton, N.C., 812 F. Supp. 2d 696, 701 (E.D.N.C. 2011) (quotation and citation omitted); see Angel v. Ward, 43 N.C. App. 288, 258 S.E.2d 788, 792 (1979).

Plaintiffs do not plausibly allege defamatory statements that Farrelly made outside the scope of his involvement in the quasi-judicial proceedings involving plaintiffs. Accordingly, the court dismisses the defamation and libel per se claim against Farrelly.

V.

On August 21, 2017, plaintiffs filed their second amended complaint, naming (for the first time) Shannon Castillo as a defendant. On February 7, 2018, the clerk notified plaintiffs of their failure to make service on Castillo within 90 days [D.E. 80]. On February 21, 2018, plaintiffs responded, alleging that the departure of one of their two attorneys explained the lack of service [D.E. 81]. On February 21, 2018, plaintiffs mailed a copy of the second amended complaint to

22

Castillo, via USPS certified mail, return receipt requested. See [D.E. 88-1].

On March 19, 2018, Castillo moved to dismiss for lack of personal jurisdiction, lack of service, and insufficient process, and for failure to state a claim [D.E. 84]. Castillo contends that this court lacks personal jurisdiction over her because she has not been served in accordance with the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 4; Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998); Mylan Labs., Inc., 2 F.3d at 60.

On April 3, 2018, plaintiffs moved to allow service after the 90 deadline specified in Rule 4(m) [D.E. 87]. Rule 4(m) requires a court to extend the time for service upon a showing of good cause. See Fed. R. Civ. P. 4(m). "Good cause requires a showing that the plaintiff made reasonable and diligent efforts to effect service prior to the [90]–day limit, which may include a showing that plaintiff's attempts at service were unsuccessful due to a putative defendant's evasion of process." Chen v. Mayor & City Council of Baltimore, 292 F.R.D. 288, 293 (D. Md. 2013), aff'd, 546 F. App'x 187 (4th Cir. 2013) (per curiam) (unpublished); see Hai Xu v. FMS Fin. Sols., LLC, No. CIV. ELH-10-3196, 2011 WL 2144592, at *2 n.3 (D. Md. May 31, 2011) (unpublished); Quann v. Whitegate–Edgewater, 112 F.R.D. 649, 659 (D. Md.1986). "Accordingly, the court may find good cause where the plaintiff has taken some affirmative action to effectuate service of process upon the defendant or has been prohibited, through no fault of his own, from taking such an affirmative action." Chen, 292 F.R.D. at 293 (quotation and alteration omitted); see Tenenbaum v. PNC Bank Nat. Ass'n, No. CIV.A. DKC 10-2215, 2011 WL 2038550, at *4 (D. Md. May 24, 2011) (unpublished). Good cause to extend Rule 4(m)'s time limit also includes instances where "(1) the plaintiff experienced difficulty in obtaining defendant's proper address; (2) the plaintiff was misdirected by court personnel as to proper procedure; or (3) a defect in the attempted service was not revealed by the defendant until after the time expired." Chen, 292 F.R.D. at 293; see Hoffman

v. Baltimore Police Dep't, 379 F. Supp. 2d 778, 786 (D. Md. 2005). Thus, good cause generally requires "the interference of some outside factor [that] prevented the otherwise-diligent plaintiff from complying with the rule." Chen, 292 F.R.D. at 293, see Tenenbaum, 2011 WL 2038550, at *4. On the other hand, Rule 4 is aimed to prevent, "inadvertent or heedless non-service" excluding cases where "the delay in service was attributable to attorney inadvertence and not to external factors that would reasonably stifle a plaintiff's due diligence." T & S Rentals v. United States, 164 F.R.D. 422, 425 (N.D.W. Va. 1996) (alteration omitted); see Quann 112 F.R.D. at 659–61.

Plaintiffs assert "good cause" because one attorney withdrew from the case and the remaining attorney inadvertently failed to ensure that Castillo was served. See [D.E. 88] 5. Attorney inadvertence is not good cause for failure of service. See, e.g., T&S Rentals, 164 F.R.D. at 425. Furthermore, Stacey Gahagan has represented plaintiffs throughout this lawsuit. Accordingly, plaintiffs' motion to extend time is denied, and the court grants Castillo's motion to dismiss. See Martinez v. United States, 578 F. App'x 192, 193–94 (4th Cir. 2014) (per curiam) (unpublished).

Alternatively, even if the court were to find "good cause," and grant the motion to extend service, the court would still grant the motion to dismiss. The clerk of court did not sign the summons attached to the complaint which was mailed to Castillo. See [D.E. 84-1]. Thus, the summons is invalid. See Justice ex rel. Son v. Farley, No. 5:13-CV-343-D, 2014 WL 229127, at *5 (E.D.N.C. Jan. 21, 2014) (unpublished), aff'd sub nom. Justice v. Farley, 569 F. App'x 181 (4th Cir. 2014) (per curiam) (unpublished).

## VI.

In sum, the court GRANTS in part and DENIES in part the Board's motion to dismiss [D.E. 67]. Plaintiffs' Title IX claims against the Board and K.B.'s claim against the Board under the North Carolina Whistleblower Act survive. The court DISMISSES the other claims against the Board.

24

The court GRANTS in part and DENIES in part Farrelly's motion to dismiss [D.E. 69]. Plaintiffs' 42 U.S.C. § 1983 claims against Farrelly and K.B.'s claim against Farrelly under the North Carolina Whistleblower Act survive. The court DISMISSES all other claims against Farrelly. The court also DISMISSES the Title IX claims against Whichard, Harris, Strother, and Sugg. The court GRANTS Castillo's motion to dismiss for lack of personal jurisdiction and for improper service and process [D.E. 84], and DENIES plaintiffs' motion to allow service after the deadline [D.E. 87].

SO ORDERED. This 18 day of September 2018.

JAMES C. DEVER III
Chief United States District Judge